MR. JUSTICE SHEA
delivered the opinion of the Court.
The State appeals from an order of the Gallatin County District Court which declared section 61-8-404, MCA unconstitutional and suppressed all evidence of the defendant’s refusal to submit to a breathalyzer sobriety test after he was arrested for driving while under the influence of intoxicants. The primary question on appeal is whether the refusal is testimonial in nature so that the fact of refusal cannot be admitted into evidence. We hold that such refusal is testimonial in nature and that to admit evidence of the fact of refusal would violate the defendant’s Fifth Amendment privilege as guaranteed by the United States Constitution, and would further violate defendant’s privilege as guaranteed by Art. II, § 25 of the Montana Constitution.
A second question raised, but which we do not reach here because of our holding, is defendant’s contention that admission of evidence of his refusal to take the breathalyzer test violates his right to due process because he was not told the consequences of his refusal. Without specifically setting forth the actual basis for its decision, the trial court granted the motion in limine, and thus suppressed all evidence of the defendant’s refusal to take the breathalyzer test.
Shortly after the defendant’s arrest on June 6, 1980, for driving while under the influence of alcohol, he was taken to the Bozeman police station and asked to submit to a breathalyzer test and to perform certain physical coordination exercises. He performed the coordination exercises, but refus *187 ed to submit to the breathalyzer test. The police recorded all of his activities on videotape, including his refusal to take the breathalyzer test.
Before trial, the defendant filed a motion in limine to suppress all evidence of his refusal to submit to the breathalyzer test as well as any evidence of license suspension resulting from that refusal. Section 61-8-404(2), MCA, states that if one refuses to submit to a sobriety test, the fact of refusal can be admitted into evidence against him. However, section 61-8-402(3), MCA, permits a person to refuse a sobriety test. Defendant argued that admitting evidence of his refusal to take the sobriety test would violate his privilege against self-incrimination and his right to due process. The trial court agreed and granted the motion in limine.
Although the defendant concedes he has no federal constitutional right to refuse a sobriety test (see Schmerber v. California (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908), he contends that section 61-8-404(2), MCA, in one breath gives him a right to refuse the sobriety test, but in the next breath permits the fact of refusal to be admitted as evidence against him. This statutory right of refusal is testimonial or communicative in nature, he argues, and was compelled by the State. He further argues that evidence of his refusal violates his privilege against being compelled to testify against himself, and is equivalent to allowing prosecutorial comment on his right to remain silent.
The State argues, on the other hand, that the refusal is not testimonial or communicative in nature, and therefore it is not protected by the privilege against self-incrimination. The State cites a line of cases which holds that the refusal to take a sobriety test is conduct to be viewed as circumstantial evidence of guilt, in the same way that escape, flight, and false alibi are viewed. For example, see Commonwealth v. Robinson (1974), 229 Pa. Super. 131, 324 A.2d 441 (refusal is circumstantial evidence from which the jury can infer his state of mind); People v. Sudduth (1966), 65 Cal.2d 543, 55 Cal.Rptr. 393, 421 P.2d 401, cert.denied (1967), 389 U.S. 850 (where refusal might operate to suppress rapidly-disappearing evidence of intoxication, it should not be encouraged as a *188 device to escape prosecution and does not qualify for Fifth Amendment protection); State v. Durrant (1963), 55 Del. 510, 188 A.2d 526 (evidence of refusal reflects defendant’s attitude toward the crime and is a matter of weight for the jury to decide). The fact is, however, that this line of cases fails to recognize that escape, flight, and false alibi are not compelled by the State. Under section 61-8-404(2), supra, the defendant is compelled to choose between providing physical evidence against himself by submittng to the sobriety test and providing testimonial evidence against himself by refusing to submit to the sobriety test. That is no choice at all.
The statute which recognizes the right to refuse the test, section 61-8-404, MCA, also provides for the admissibility of the fact of refusal:
“(1) Upon the trial of any criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person’s blood at the time of the act alleged as shown by a chemical analysis of his blood, breath, or urine is admissible.
“(2) If the person under arrest refused to submit to the test as hereinabove provided, proof of refusal shall be admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor.”
Many states have held that admitting evidence of a defendant’s refusal to take a sobriety test violates the privilege against self-incrimination because the effect of admitting evidence of the defendant’s refusal is equivalent to compelling the defendant to testify against himself. See, for example, State v. Adams (W.Va. 1978), 247 S.E.2d 475; Dudley v. State (Tex.Cr.App.Ct. 1977), 548 S.W.2d 706; People v. Rodriguez (1975), 80 Misc.2d 1060, 364 N.Y.S.2d 786; Application of Baggett (Okla. 1974), 531 P.2d 1011; State v. Andrews (1973), 297 Minn. 260, 212 N.W.2d 863, cert.denied (1974), 419 U.S. 881; Johnson v. State (1972), 125 Ga. 607, 188 S.E.2d 416; Gay v. City of Orlando (Fla. D.C.App. 1967), 202 So.2d 896, cert.denied *189 (1968), 390 U.S. 956. We agree with these decisions that not only does admission of such evidence violate the defendant’s privilege against self-incrimination, but also that the admission of such evidence is not always reliable and is highly prejudicial to the defendant, in effect forcing him to take the witness stand to explain why he refused to take the test, or to bear the consequences of not explaining.
Without question, the fact of refusal to take a sobriety test will be considered as circumstantial evidence of the defendant’s belief that the test results would have been incriminating, and without question that is the argument any prosecutor would make to the jury. Effectively, the evidence of refusal has substantially the same effect in the prosecution’s case as the evidence the prosecution sought to obtain through the resisted examination. Evidence of a defendant’s refusal, whether expressed verbally or by physical resistance, is relevant in its testimonial aspect as the equivalent of the statement, “Because I fear that the test will produce evidence of my guilt, I refuse to take the test.” 78 Yale L. J. 1074,1082-1085 (1969). And the likelihood is strong that the jury will ascribe undue weight to the defendant’s refusal.
We analogize this to a situation where the State offers a defendant a polygraph examination, but the defendant refuses it. Surely, the State would like to argue to the jury that it had offered the defendant a polygraph examination, but that he refused. And just as surely, we doubt that any court would not find this to be an improper invasion into the defendant’s privilege against self-incrimination. In either situation, the inference left for the jury is that the defendant displayed consciousness of his guilt. Such evidence is inadmissible if it is compelled by the State.
In addition, a defendant may have valid reasons for refusing a breathalyzer test-reasons which do not reflect his consciousness of guilt. Yet, if the fact of his refusal is admitted into evidence, he will be compelled to either take the witness stand to explain his refusal or to take the chance that the jury will infer that he was in fact under the influence of alcohol. Several cases illustrate situations in which the defendant *190 refused to submit to the test for reasons other than fear that the test would yield evidence of guilt: State ex rel. Baumert v. Municipal Court of Phoenix (1978), 119 Ariz. 142, 579 P.2d 1112 (failure to take test was due to defendant’s asthma); State v. Adams (W.Va. 1978), 247 S.E.2d 475 (defendant may fear the test itself or may distrust the procedure or the competency of the testers); State v. Paschal (1961), 253 N.C. 795, 117 S.E.2d 749 (defendant feared he would have to pay for the test); Engler v. State (Okla. Crim. 1957), 316 P.2d 625 (bona fide doubts as to reliability of test); and Columbus v. Mullins (1954), 162 Ohio St. 419, 123 N.E.2d 422 (defendant desired presence of a doctor). In each of these cases, it was held that admitting evidence of defendant’s refusal to take the test violated his privilege against self-incrimination.
The likelihood of prejudice to a defendant increases if he had an innocent reason for refusing the test, but, for other reasons, exercises his privilege not to take the witness stand and testify why he did not submit to the test. On one hand, the defendant would be entitled to an instruction that the jury is not to make inferences against the defendant because of his failure to take the witness stand. See, Griffin v. California (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, reh.denied (1965), 381 U.S. 957. On the other hand, the jury would be instructed that it could consider all circumstantial evidence including the defendant’s failure to submit to the test, even though the defendant had the statutory right to refuse the test. The effect, however, of the statutory right to refuse the test is that it provides an unfair choice: the defendant may either voluntarily submit to the test or he may refuse, and, in the eyes of the jury, admit that he could not successfully pass the test. It is manifestly unfair to give an individual a right to refuse the test, and then to impose substantially the same penalty for refusing as that for submitting to the test.
The statutory right to refuse to take the test is perhaps a legislative expression that citizens should be protected from a distasteful struggle to forceably obtain physical evidence from their bodies. In Schmerber, supra, the United States Supreme Court held that the privilege against self-incrimination protects a defendant from being compelled to testify against *191 himself, or to otherwise provide evidence of a testimonial or communicative nature. The court ruled, however, only that the results of a blood test administered to a defendant despite his objection were admissible because blood test results were real, physical evidence, rather than evidence of a testimonial nature.
The issue of whether a refusal to submit to a breathalyzer test could be admitted as evidence without violating a defendant’s Fifth Amendment privilege was also raised in Schmerber, but the Court refused to rule on that issue because the defendant had not preserved that issue for appeal. Even so, the Court indicated in a now famous footnote that the issue would be controlled by general Fifth Amendment principles rather than on the narrow ground that prosecutorial comment on the defendant’s refusal amounted to comment on his choice to exercise his Fifth Amendment privilege not to take the witness stand. Schmerber, supra.
The issue is also controlled by Art. II, § 25 of our own constitution, which provides that “No person shall be compelled to testify against himself in a criminal proceeding”. The issue involves a communication that is testimonial in nature, and we must resolve the issue by applying Art. II, § 25. Clearly, to permit evidence of defendant’s refusal to take the breathalyzer test would violate not only the United States Constitution, but also our own constitution.
In State v. Finley (1977), 173 Mont. 162, 566 P.2d 1119, we held that a defendant’s privilege against self-incrimination was not violated by admitting into evidence a videotape recording of his post-arrest words and actions. We decided that the tape had not been introduced for the incriminating content of the words uttered by the defendant, but rather for the purpose of aiding the jury in understanding the testimony of the witnesses who had observed the defendant’s unsteady walk and his slurred speech after his arrest. We specifically noted that the videotape did not contain incriminating responses to interrogation by the police. But the same situation does not exist here. It is obvious that defendant’s refusal is inherently self-incriminating because it carries a strong inference of guilt-the prosecutor would surely argue that defendant’s *192 refusal to take the test was prompted only by his knowledge that the test results would reveal his intoxication, and therefore incriminate him.
We hold under our own constitution, that if a communication of refusal, whether written, verbal, or otherwise, involves the defendant’s consciousness of the facts and the operation of his mind in expressing it, the communication is testimonial in nature. A defendant’s silence or negative reply to an officer’s request which calls for an immediate reply is clearly an overt communication of the defendant’s thoughts in response to the request. Doyle v. Ohio (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. It is the act of refusal that is pertinent and suggestive of guilt, rather than the way in which it is communicated. Under our constitution, the privilege against self-incrimination forbids any compulsory communication of an accused person’s thoughts, whether by acts or words spoken, and the fact that it does not extend its protection to forbid the compulsory exhibition of physical characteristics does not nullify the protection it does provide.
In deciding this issue, we are mindful of a statement of the United States Supreme Court in Murphy v. Waterfront Commission of New York Harbor (1964), 378 U.S. 52, 55, 84 S.Ct. 1594, 1596-1597, 12 L.Ed.2d 678, 681, where the Court cogently spelled out that the nature of our criminal justice system reflects:
“[0]ur preference for an accusatorial rather than an inquisitorial system of criminal justice; our fear that self-incriminating statements will be elicited by inhumane treatment and abuses; our sense of fair play which dictates ‘a fair state-individual balance by requiring the govemment...in its contest with the individual to shoulder the entire load,’ (citations omitted); our respect for the inviolability of the human personality and of the right of each individual ‘to a private enclave where he may lead a private life,’ (citations omitted);. . . and our realization that the privilege, while sometimes ‘a shelter to the guilty,’ is often ‘a protection to the innocent.’”
The United States Supreme Court has declared that the privilege against self-incrimination must be liberally construed in favor of the accused, Hoffman v. United States *193 (1951), 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.ED. 1118, 1124, and we must also liberally construe Art II, § 25, of our own constitution.
We affirm the decision of the trial court suppressing evidence of defendant’s refusal to take the breathalyzer test, and at his trial, we direct that the prosecution shall not directly or indirectly submit evidence to the jury that the defendant was offered but refused to take a breathalyzer test.
Affirmed and remanded for further proceedings.
MR. JUSTICE DALY, MORRISON and SHEEHY concur.