MR. CHIEF JUSTICE HASWELL
delivered the opinion of the Court.
This case comes to us for the second time following remand by the United States Supreme Court.
This case began when defendant, Robert Charles Jackson, was charged with driving a motor vehicle while under the influence of alcohol, fourth offense, a misdemeanor, in the District Court of Gallatin County. During the course of prosecution, the District Court entered an order suppressing all evidence of Jackson’s refusal to submit to a breathalyzer sobriety test. On appeal, this Court affirmed the District Court in a 4-3 decision.
On application by the State, the United States Supreme Court granted certiorari, reviewed our decision, and entered the following order which we quote in pertinent part:
“The petition for writ of certiorari is granted. The judg *340 ment is vacated and the case is remanded to the Supreme Court of Montana to consider whether its judgment is based upon federal or state constitutional grounds, or both, and, if its judgment is not based upon state constitutional grounds, for further consideration in light of South Dakota v. Neville, 459 U.S. [-, 103 S.Ct. 916, 74 L.Ed.2d 748], (1983).”
The factual background of this case commenced on June 6, 1980, when Jackson was arrested by Bozeman police for driving under the influence of alcohol. At the police station, he was asked to submit to a breathalyzer test. He refused. This was recorded on videotape together with his performance of certain coordination tests.
Jackson was charged with driving a motor vehicle under the influence of alcohol, fourth offense, in violation of section 61-8-401, MCA. He filed a motion in limine seeking suppression of all evidence of any license suspension resulting from that refusal. The District Court granted suppression, apparently holding that part of Montana’s implied consent statute permitting the admission of such evidence unconstitutional.
On appeal, this Court in a split decision affirmed the District Court on the basis that such refusal was testimonial in nature and coerced; hence, admission of such evidence would violate Jackson’s right against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution and Article II, Section 25, of the Montana Constitution. State v. Jackson (1981), 195 Mont. 185, 637 P.2d 1.
The Montana Attorney General filed a petition for writ of certiorari seeking a review of our decision by the United States Supreme Court. Thereafter, the United States Supreme Court issued an opinion in a South Dakota case holding that the Fifth Amendment protection against self-incrimination did not prohibit admission in evidence of a person’s refusal to take a blood-alcohol sobriety test in a DUI prosecution under South Dakota’s implied consent *341 statute. South Dakota v. Neville (1983), 459 U.S. _, 103 S.Ct. 916, 74 L.Ed.2d 748. Finally, the United States Supreme Court vacated our judgment in the instant case and remanded it to us for further consideration as heretofore set forth.
On remand, we ordered supplemental briefing and heard oral argument on May 31, 1983.
Two issues are presented for our consideration:
1. Was our Jackson decision based on federal or state constitutional grounds, or both?
2. If our Jackson decision was not based on state constitutional grounds, was it overruled by South Dakota v. Neville?
The State contends that there are no adequate and independent state constitutional grounds supporting this Court’s Jackson decision. The State argues that our Jackson opinion rests on an analysis of federal cases construing the Fifth Amendment protection against self-incrimination and no reasons are given in the Jackson opinion for construing Montana’s constitutional prohibitions against self-incrimination any differently. The State points to prior decisions of this Court holding that Montana’s constitutional provision against self-incrimination affords no broader protection to the accused than does the Fifth Amendment in the United States Constitution.
Jackson contends that this Court in Jackson expressly held that its decision was based on state constitutional grounds as well as federal constitutional grounds. He argues that this Court in Jackson gave reasons for according greater breadth to Montana’s constitutional prohibition against self-incrimination than that in the federal constitution by its analysis of cases from other states. Jackson buttresses his argument by pointing out references in Jackson to state constitutional considerations.
The United States Supreme Court has addressed this question on numerous prior occasions to determine its authority to review a state court decision. It is well settled *342 that the United States Supreme Court is the ultimate authority in interpreting provisions of the United States Constitution just as the state supreme court is the ultimate authority in interpreting the provisions of its state constitution. A problem arises when it is unclear whether a state decision is based on the United States Constitution or the state constitution, or both. Essentially, the United States Supreme Court has ruled that unless the state court opinion is based on adequate and independent state grounds, the United States Supreme Court has jurisdiction to review it. Michigan v. Long (1983), _U.S._, 103 S.Ct. 3469, 77 L.Ed.2d 1201; South Dakota v. Neville, supra; Delaware v. Prouse (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660; Zacchini v. Scripps-Howard Broadcasting Co. (1977), 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965.
Within this basic framework, the United States Supreme Court has developed more specific guidelines. Where the state supreme court “held as it did because it felt under compulsion of federal law as enunciated by this Court so to hold, it should be relieved of that compulsion. It should be free to decide . . . these suits according to its own local law.” Missouri ex rel. Southern R. Co. v. Mayfield (1950), 340 U.S. 1, 5, 71 S.Ct. 1, 3, 95 L.Ed. 3, cited with approval in Zacchini v. Scripps-Howard Broadcasting Co., supra. If the state court “felt compelled by what it understood to be federal constitutional considerations to construe ... its own law in the manner it did,” then the United States Supreme Court will not treat a normally adequate state ground as independent and its jurisdiction is clear. Delaware v. Prouse, 440 U.S. at 653, 99 S.Ct. at 1395. The essence of the principle applicable to resolution of the issue has recently (July 6, 1983) been summarized in this manner: *343 and independence of any possible state law ground is not clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so. If a state court chooses merely to rely on federal precedents as it would on the precedents of all other jurisdictions, then it need only make clear by a plain statement in its judgment or opinion that the federal cases are being used only for the purpose of guidance, and do not themselves compel the result that the court has reached . . .” Michigan v. Long, - U.S. at -, 103 S.Ct. at 3476, 77 L.Ed.2d at 1214.
*342 “. . . Accordingly, when, as in this case, a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy
*343 Our original Jackson decision contained statements that to admit evidence of refusal to submit to a breathalyzer sobriety test would violate the Fifth Amendment privilege against self-incrimination and Montana’s privilege against self-incrimination guaranteed by Article II, Section 25 of the Montana Constitution. The opinion indicates that the basis of that ruling was that such refusal is testimonial in nature and coerced, thus falling within the ambit of protection against self-incrimination.
As we read the Jackson opinion, that conclusion is reached primarily by an analysis of federal cases interpreting the Fifth Amendment protection against self-incrimination. Schmerber v. California (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, is distinguished on the basis that a blood sample is real, physical evidence of a nontestimonial nature beyond Fifth Amendment protection. Doyle v. Ohio (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, was cited for the proposition that a person’s refusal to take a sobriety test is an overt communication of that person’s thoughts, compelled by the police, from which it was reasoned that it was protected against self-incrimination by the Fifth Amendment; a statement follows that under our constitution, the privilege against self-incrimination of an accused person’s thoughts, whether by acts or words spoken, and the fact it does not extend its protection to forbid the com *344 pulsory exhibition of physical characteristics does not nullify the protection it does provide; Hoffman v. United States (1951), 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118, and Murphy v. Waterfront Comm’n (1964), 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678, were cited as support for a liberal construction of the Fifth Amendment in favor of the accused followed by a statement that we must also liberally construe Article II, Section 25, of the Montana Constitution.
A number of state decisions are cited as examples of state rulings that the admission of evidence of a refusal to take a sobriety test violates the privilege against self-incrimination. Of the state cases cited, four are based on interpretation of the Fifth Amendment to the United States Constitution, one is based on both federal and state constitutions, and two are based exclusively on their own state constitutions (State v. Andrews (1973), 297 Minn. 260, 212 N.W.2d 863, and Application of Baggett (Okl.1974), 531 P.2d 1011). No reasons are given in Jackson why we should interpret our own constitution the same as Minnesota and Oklahoma interpreted theirs, nor does the opinion contain any analysis or reason for extending the scope of Montana’s constitutional protection against self-incrimination beyond that afforded by its Fifth Amendment counterpart in the federal constitution. The Jackson opinion ignores prior rulings by this Court that the Montana constitutional guarantee of the privilege against self-incrimination affords no broader protection to an accused than does the Fifth Amendment (State v. Armstrong (1976), 170 Mont. 256, 552 P.2d 616) and that the opinion of the United States Supreme Court delineates the maximum breadth of the privilege against self-incrimination in Montana (State v. Finley (1977), 173 Mont. 162, 566 P.2d 1119).
In sum, we read the Jackson opinion as based primarily on United States Supreme Court decisions interpreting the Fifth Amendment to the United States Constitution. Any reference to the state constitution is not independent of the *345 federal constitutional decisions interpreting the Fifth Amendment. No reasons are given nor an analysis made for extending our state constitutional protections against self-incrimination beyond that afforded by its federal counterpart. The following language of the United States Supreme Court in a Michigan case is equally applicable to our Jackson opinion:
“. . . The references to the state constitution in no way indicate that the decision below rested on grounds in any way independent from the state court’s interpretation of federal law. Even if we accept that the Michigan constitution has been interpreted to provide independent protection for certain rights also secured under the Fourth Amendment, it fairly appears in this case that the Michigan Supreme Court rested its decision primarily on federal law.” Michigan v. Long, - U.S. at -, 103 S.Ct. at 3477, 77 L.Ed.2d at 1216.
We now reconsider our Jackson decision in the light of South Dakota v. Neville, supra. In that case Neville was stopped by two Madison, South Dakota, police officers after they saw him fail to stop at a stop sign. The officers asked him for his driver’s license and asked him to get out of the car. As Neville left the car, he staggered and fell against the car to support himself. The officers smelled alcohol on his breath. Neville did not have a driver’s license and informed the officers that it was revoked after a previous driving-while-intoxicated conviction. The officers asked him to touch his finger to his nose and to walk a straight line. When Neville failed these field sobriety tests, he was placed under arrest and read his Miranda rights. He acknowledged that he understood these rights and agreed to talk without a lawyer present. Reading from a printed card, the officers then asked Neville to submit to a blood-alcohol test and warned him that he could lose his license if he refused. Neville refused to take the test stating, “I’m too drunk, I won’t pass the test.” The officers again read the request to submit to a test and then took Neville to the police station, *346 where they read the request to submit a third time. Neville continued to refuse to take the test, again saying he was too drunk to pass it.
South Dakota law provides that refusal to submit to a blood-alcohol test “may be admissible into evidence at the trial.” Another South Dakota statute specifically provides that evidence of refusal to submit to a chemical analysis of blood, urine, breath or other bodily substance “is admissible into evidence” at a trial for driving under the influence of alcohol and that a person “may not claim privilege against self-incrimination with regard to admission of refusal to submit to chemical analysis.”
The trial court granted suppression for three reasons: (1) the South Dakota statute allowing evidence of refusal violated Neville’s federal constitutional rights; (2) the officers failed to advise Neville that the refusal could be used against him at the trial; and, (3) the refusal was irrelevant to the issue at the trial. The South Dakota Supreme Court affirmed the suppression on the ground that the statute allowing introduction in evidence of the refusal violated the federal and state privilege against self-incrimination. The South Dakota Supreme Court reasoned that the refusal was a communicative act involving Neville’s testimonial capacities and that the state compelled this communication by forcing Neville “to choose between submitting to a perhaps unpleasant examination and producing testimonial evidence against himself.” State v. Neville (S.D.1981), 312 N.W.2d 723, 726.
The United States Supreme Court granted certiorari and upon review reversed the judgment of the South Dakota Supreme Court. The United States Supreme Court held that the admission in evidence of a defendant’s refusal to submit to a blood-alcohol test did not offend his Fifth Amendment right against self-incrimination. The Court reasoned that a refusal to take such a test after a police officer has lawfully requested it is not an act coerced by the officer and thus is not protected by the privilege against *347 self-incrimination. The Court reasoned that the offer of taking the test is clearly legitimate and becomes no less legitimate when the state offers a second option of refusing the test with the attendant penalties for making that choice.
The United States Supreme Court went on to hold that it was not fundamentally unfair or in violation of due process to use Neville’s refusal to take the blood-alcohol test as evidence of guilt, even though the police failed to warn him that the refusal could be used against him at the trial. The court held that such failure to warn was not the sort of implicit promise to forego use of evidence that would unfairly “trick” Neville if the evidence were later offered against him at the trial.
Montana’s implied consent law provides in pertinent part that any person who operates a motor vehicle on the public highways shall be deemed to have given his consent to a chemical test of his blood, breath or urine if arrested by an officer for driving a motor vehicle while under the influence of intoxicating liquor. Section 61-8-402(1), MCA. The statute further provides that if he refuses, no test shall be given but that his driver’s license shall be suspended for sixty days under certain circumstances. Section 61-8-402(3), MCA. The implied consent law also provides that proof of refusal to submit to the test is admissible in evidence upon his trial for DUI. Section 61-8-404, MCA.
In the instant case, Jackson is alleged to have refused to submit to a breathalyzer sobriety test. The United States Supreme Court has clearly held that the admission in evidence of a defendant’s refusal to submit to a blood-alcohol test in a DUI prosecution does not violate the defendant’s Fifth Amendment right against self-incrimination. Since Montana’s implied consent law covers a breath test as well as a blood-alcohol test, as does South Dakota’s, the Neville case is squarely applicable to Jackson and compels reversal of the District Court’s suppression of evidence of refusal on Fifth Amendment grounds.
*348 The Neville decision likewise forecloses defendant’s claim that the Montana statute offends Jackson’s right against self-incrimination under Montana’s Constitution, Article II, Section 25. The Fifth Amendment to the United States Constitution provides, “[n]o person . . . shall be compelled in any criminal case to be a witness against himself ...” while its counterpart in the Montana Constitution provides, “[n]o person shall be compelled to testify against himself in any criminal proceeding.” The language used in the two constitutions is substantially identical and affords no basis for interpreting Montana’s prohibition against self-incrimination more broadly than its federal counterpart. Nor do we find any indication in the proceedings of Montana’s Constitutional Convention that would indicate that the framers intended to grant any broader protection thereunder than that contained in the Fifth Amendment to the United States Constitution.
Moreover, this Court has expressly held to the contrary. “The Montana constitutional guaranty affords no greater protection than that of the Federal constitution.” State v. Armstrong, supra, 552 P.2d at 619. A year later we relied on this statement in Armstrong and further held, “[t]he opinions of the United States Supreme Court, therefore, delineate the maximum breadth of the privilege against self-incrimination in Montana.” State v. Finley, supra, 566 P.2d at 1121.
Accordingly, we hold that the Montana constitutional prohibition against self-incrimination is not offended by the admission in evidence of defendant’s refusal to submit to a breathalyzer sobriety test pursuant to section 61-8-404, MCA.
We do not reach the question of whether evidence of defendant’s license suspension is admissible. Although that issue was included in defendant’s motion in limine, it was neither briefed nor argued in the District Court nor in this Court on appeal.
The order of the District Court suppressing evidence of *349 Jackson’s refusal to submit to a breathalyzer sobriety test is reversed. This cause is remanded to the District Court of Gallatin County for further proceedings.
MR. JUSTICES HARRISON, GULBRANDSON and WEBER concur.